one nine seven seven Joseph D. Marcy against Superintendent SCI Phoenix. Good afternoon, Your Honors. Dave Roth is pro bono counsel for Mr Marcy. I'd like to reserve three minutes for rebuttal. You know, as this case begins with the fact that Mr Marcy is innocent. We know that because DM testified under oath nearly a decade ago. The testimony she gave her father's criminal trial was false and that he did not abuse her. And this court is bound to accept that because the PCRA court, the same trial court that presided over Marcy's original trial, found that that recantation was credible and that in light of that recantation, there is no evidence on which a jury could possibly convict him. Given those factual findings, this court's decision in current, uh, establishes that Marcy is incarcerated in violation of due process because his conviction was based entirely on perjured testimony. And current isn't alone. That same holding has been reached by the Second Circuit, the Ninth Circuit district courts in this circuit, which have granted relief in similar cases where defendant was convicted entirely on false testimony. Focus it back on current. You you maintain that current is not a case regarding prosecutorial knowledge and prosecutorial misconduct. In other words, it creates some sort of freestanding evidentiary examination. How do you square that with the facts of current where there was prosecutorial misconduct and egregiously so? Well, first of all, the court is explicitly finds in current that there was no prosecutorial misconduct. There was no knowledge on the part of prosecutors that the testimony at issue was false. Sorry, government misconduct. I'm sorry I'm misspeaking. Yes, the testifying witnesses were clearly known to be know about it. But but how do you deal with that? So it's certainly your honor. Those the witnesses in that case were government agents. They were police officers. But the court's decision doesn't hinge on that fact. What the court says is that it violated due process because of the importance that testimony had to the trial. In that case, it was false testimony on an indispensable point. And that's the same basic analysis that you find in Sanders, the same basic analysis you find in the second and the Ninth Circuit cases. It's not that I don't want to get too caught up here because we're not pivoting over to the logic and Sanders that distinguishes our holding in Smith. And so I know your response to that is well, Smith is reconcilable with current because current doesn't deal with, as we right here, suppression of evidence by a prosecuting officer. It deals with something else. And that's how you reconcile the Sanders courts express disagreement with this court's decision in Smith and say we reach it opposite conclusion. So Sanders misread Smith and Smith misread current. And that's how you get a kind of wide of cases. Um, to be honest, I don't recall Sanders dealing with Smith explicitly. I think I would view that statement in Smith as dicta because the court found that there was no indication that any testimony was perjured. There was no recantation in that case. And while it a petitioner has to show that there was prosecutorial knowledge, I think that conflicts with current's earlier statement. The prosecutorial knowledge is not required. And I'll also note that this court has endorsed similar ideas in more recent cases. There's the hunt Oakley case from 2012, which involved a defendant who was convicted based on expert testimony that was subsequently determined to be objectively false. And in that case, there was no prosecutorial misconduct. There was no knowledge at the time that the testimony was false. But subsequent science established that what that witness testified to was simply incorrect. And this court held that that was a due process violation, given how central that testimony was to the conviction. So this is an idea that this court has endorsed in extraordinary cases like this, where the entire basis of the conviction is subsequently learned to have been essentially a shame or a lie. And it's a proposition that other courts have. Let me ask you, what is your theory of government action here? Is it because you rely on Sanders a lot, which characterized it as a failure to act to cure a conviction, but you, I think, cast it as the use, the government's use of testimony that the court later found credibly recanted. So is it the failure to cure, or is it just the simple use, whether or not it was a knowing use? So I think it's both to an extent, but I would rely more on the second. And in my view, I don't really see how there's a state action problem here. Mr. Marcy is in jail. Pennsylvania put him there. It has taken his liberty from him. It did so based on a proceeding that it instituted, brought by its prosecutors, investigated by its police. Now, it may not be the case that it committed mass misconduct in doing so, but we now know that the basis for that prosecution was essentially a sham. And just like in cases like Hong Took Lee, there may not be government misconduct, but the false nature of the evidence that was indispensable to the trial means that the trial was not a remotely adequate procedure to determine Mr. Marcy's guilt. So do you... I guess I have two questions. When you were discussing whether or not this was barred by Teague, you mentioned that Sanders too, the court found that it wasn't a criminal procedural right at all. And that seemed to be predicated on the theory that the state action was a failure to act, a failure to act, that this came up in a habeas and a collateral proceeding, and therefore was not a trial. And in fact, they said the habeas petitioner does not contend that the state conducted the trial illegally or otherwise acted in an unconstitutional fashion. So if you're mainly relying on sort of a trial theory here, doesn't that take you out of the Sanders exception, if you're not relying on the fact that the state sort of failed to cure? Yeah. Just saying there's no misconduct, there doesn't need to be misconduct, does that take you out of... So a couple of points, Your Honor. First, I would say simply the Teague issue has not been raised by Pennsylvania. It was forfeited a long time ago. I don't think there's any basis in this case for the court to sua sponte raise Teague in order to keep an innocent man in jail. Second, Your Honor, Teague only applies to a new rule. As I argued, I think this court has endorsed the principle of Sanders long before this conviction was final. It did so in Curran, it's done so in Huntook Lee. I mean, we're gonna... I mean, I guess, let me ask it this way. If Curran does require state action and we see it differently, then what's your other argument? Well, the next decision from this court would be Huntook Lee, which predates Mr. Marcy's conviction being final and recognize that a conviction based on flawed expert testimony violates due process when that expert testimony is false and indispensable to the conviction. So I think that's the same principle as Curran. It's the same recognition of this point that in extraordinary cases where a conviction is secured based on false or perjured testimony, that violates due process. Now, once if... So those two cases, I think, establish that this is not a new rule. It's also the case, Your Honor, that Sanders is obviously predates Mr. Marcy's conviction by decades. Ninth Circuit decisions predate Marcy's conviction by decades. So I'm struggling a little bit with this rule being a new one when it's something that courts were applying in 1989. Well, we don't follow rules of the Second Circuit or the Ninth Circuit, and they don't follow our rules. That's certainly true, Your Honor. So that's a careful consideration, but there's no... Are you arguing some sort of vertical stare decisis that they have over this court? Well, what I would say, Your Honor, is, is the principle that those decisions are recognizing? Is it a drastically new rule that is different from anything in this court's decisions? And I don't think it is. I think Curran, I think Hantouk Lee, I think they recognize that this is consistent with those decisions. Certainly, Sanders thought that it was consistent with Curran, a panel of... What about Smith? I just... Go back to it, because Smith raises the very question that you're talking about, right? You have someone who says, look, the government witnesses failed to tell the truth. And I think we assume, yeah, that's right, they didn't tell the truth. But there was an absence of any knowledge by a government actor, and we call that a fatal defect. And then Sanders says, we disagree with Smith. So I agree. And then Sanders, of course, is relied upon by the Ninth Circuit cases. So I agree, maybe the Ninth and Second Circuits take a different view, but we see in Smith to have rejected the argument that you're raising. Well, I think that's inconsistent with Curran, and since Curran is a prior decision... Only if Curran did not have involved a governmental actor, despite the fact that he did involve a governmental actor. So, and then, of course, Curran gets picked up by, I think it's Knopp, which then gets picked up by Brady. And that may help explain why we don't hear about Curran for the next five decades, right? Because it's a Brady. It's now what we'd think of as a Brady violation. So if you read Curran as a precursor to Brady, and you read Smith as a rejection of a freestanding constitutional right, then you can, in fact, reconcile both those decisions, and you simply see other courts, like Sanders and the Ninth Circuit, taking a different view. Does that work, or, and if not, why? I don't think that works, Your Honor, because I think that single sentence in Smith is has not demonstrated, has not even pointed to what specific testimony they think was perjured, let alone conclusively proven that it was perjured. I think it's also important for the court to recognize that the type of claim we're talking about in Curran and Sanders, in those kind of cases, is a fundamentally different claim from the knowing prosecutorial use that differs because the Second Circuit decision, the Gallagher case is, I think, a helpful discussion of that by Judge Sotomayor when she was on the Second Circuit, as she explained, when you have prosecutorial, knowing prosecutorial use of false testimony, that's a rule of essentially automatic reversal. It requires reversal if there's any chance that that false testimony influenced the jury. But this kind of claim, this Sanders Curran claim, requires that the false testimony be much more fundamental. It must go to the real heart of the case and make it such that there's no possible way the jury could have convicted the defendant but for that testimony. Now, a lot of cases, petitioners choose to follow that knowing prosecutorial use. Is there any other physical evidence in this case that could have supported a conviction? No, there's not, Your Honor. The only evidence outside of DM's testimony, either directly or hearsay through other state witnesses who testified what DM said, was testimony from Dr. Rogan. His testimony was examined, DM, approximately five months after the last alleged act of abuse. At that point, he said there were, her physical symptoms were consistent with having been abused. But of course, he could not tie that abuse to any particular defendant. And he also conceded that those symptoms were consistent with lots of events other than abuse. So it's really not very probative testimony at all. And it's certainly not probative testimony in any way as to Mr. Rogan's testimony. I don't think a jury court recognizes much in saying that given the recantation, there is really no other evidence here. And a jury would be compelled to acquit Marcy. A factual finding that is binding on this court, I would submit, really controls the case under Curran and Sanders and other decisions. So I just, oh, I'm sorry. So I just want to make sure I understand the distinction you're making. So do you agree with the Sanders statement that there's no allegation that the government conducted the trial illegally or otherwise acted in an unconstitutional fashion, and that this is a claim that's not predicated on misconduct? I would agree that the claim, as we're arguing it here, is not based on any misconduct on the part of prosecutorial officers. Yes, Your Honor. And for 14th Amendment due process purposes, if you're separating it sort of from unknowing use or even knowing possession, say, in the Brady context, it's starting to feel sort of substantive due process-y when you're saying, you know, regardless of any knowledge or misconduct, if this happens, there is a violation. I see my time is up. Your Honor, what I would say is the procedural due process is coming to play because this is the government's procedure. It brought this criminal proceeding. It put Marcy in jail based on it. It is depriving him of his liberty based on the results of that proceeding. Now, it may not be that at the time of that proceeding, we knew that it was flawed, but we do now. We know now, as a matter of fact, that the evidence that was introduced at that time. And so it's just like Hantook Lee and other cases that recognize that maybe no one acted inappropriately at the time of the prosecution. But today, we know that it was not an adequate procedure for determining the defendant's guilt. So it violates due process to imprison him based on that procedure. There's no other questions. I'll address anything in rebuttal. All right. We'll hear you on rebuttal. Thank you, Mr. Roth. Thank you, Your Honors. Mr. McMonigle. Thank you, Your Honors. Good afternoon. My name is Jim McMonigle from the Luzerne County DA's Office representing the Commonwealth in this case. The Commonwealth's position here is that the appellant is skipping over a step. There's a jurisdictional question here and whether or not the district court's decision is finding that the superior court's decision was based on an adequate state ground. The Commonwealth's position is it was an his issue of recantation by not filing it appropriately in the PCRA court. Although he did file a PCRA petition that referenced recantation, that was the first time he did that. That was filed while his case was still pending on direct appeal. Under Pennsylvania law, that's an inappropriate filing of the PCRA. The law indicates that that PCRA should be dismissed without prejudice to the defendant to raise those issues in a later appropriate PCRA once the direct appeal is over. When the direct appeal was over, the defendant filed another well, when the direct appeal was over, the trial court, the PCRA court, simply reinstated those prior to PCRA petitions, which the superior court says was inappropriate and illegal under Pennsylvania law, so they were a nullity. Defendant then filed another PCRA, which did not raise the recantation issue. He then filed a supplement to that PCRA without permission of the court under Rule 905 of the Pennsylvania Rules of Criminal Procedure. The superior court indicated that that was improper, that he did not get permission to file an amendment, and since the recantation issue had not been raised in the first case, the court had no jurisdiction, the PCRA court, nor that court, nor the superior court, had jurisdiction to decide the merits of the PCRA issue and dismiss the PCRA petition of the defendant. What's your best case supporting the assertion that the PCRA court's sua sponte reinstatement of Marcy's second petition was a legal nullity? As the case escapes me, I filed it in my brief, but there's a lot of Pennsylvania cases that say that the PCRA court, a PCRA filed while direct appeal is pending, is inappropriate, and the trial court has no authority to reinstate them sua sponte. It's in the statute. It's not referenced in the statute that it can be done that way, and I believe I did cite a case, but I'm sorry, Your Honor, it's escaping me right now. When the counseled petition incorporated the previous petition? Yes, to the extent that if the defendant had sought permission to file an amended petition with additional issues to a properly filed petition, Pennsylvania law probably would have found that as a proper amendment and considered it timely raised. Well, not talking about the counseled amendment, talking about what sometimes has been called the supplement or sometimes called the first PCRA petition. My understanding is that the first time counsel filed a petition on behalf of Mr. Marcy, they incorporated by reference Mr. Marcy's earlier petition that had been reinstated. I don't think that's the case, Your Honor, honestly. In the first counseled petition, as the Superior Court found, as I recall, and I may be incorrect because it's a pretty voluminous record and tough for me to remember everything, quite honestly, but as I recall the record, that first counseled PCRA petition did not mention recantation at all. It was only the second counseled supplement or amended petition that raised the recantation issue, and at that point, it may have incorporated one of the petitions that was found to be improperly reinstated. So that may have referred back to that second, one of those two PCRAs that were dismissed, but the one that the Superior Court found was the properly timely file PCRA did not consider or did not raise the recantation issue. So in this case, Your Honor, the Commonwealth's position is the district independent state ground based on jurisdiction, based on Pennsylvania law, based on Pennsylvania rules of criminal procedure, that the defendant did not properly raise his issues. Pennsylvania's PCRA statute is strictly jurisdictional, and there are legion cases from the Superior and Pennsylvania Supreme Courts that says our PCRA statute is jurisdictional. There are no equitable exceptions to it or any ways any court can extend the filing of that statute, and the defendant proves one of the exceptions. What could or should Marcy have done to cure the problem that you are arguing exists? His attorney should have asked permission to supplement the first counseled petition. With the recantation claim? With the recantation claim. And quite honestly, he should have waited until his direct appeal was over. I mean, to some extent, this is a problem of his own making because he jumped the gun and filed things he shouldn't have been doing. So one of the dangers of being pro se and not knowing all the rules, he's created somewhat this procedural morass that we now all have to kind of pick through to find out if he's eligible for relief. Obviously, our position is he's not. Their position is he is, and we're leaving it to your honors to make the ultimate decision. Thank you. If we could, I wanted to move on from the adequacy. Is it correct that I think Mr. Roth has stated in his briefing that there's no way that this issue could come up except for on collateral review, specifically speaking about whether perjury is or is not established law. Is it true that that can only come up on collateral appeal and, therefore, Teague is always going to be a bar to it? No, because the rules of criminal procedure rule 702 or 704 allow a defendant to file a post-sentence motion that includes a claim of after-discovered recanted evidence. So if a defendant learns of recanted evidence in that window for which he can file a pre-sentence motion, there are times when the trial court can hear that claim of after-discovered recanted evidence. So there is an opportunity, albeit a small window, for a defendant to make such a claim. If the defendant is unaware of recanted testimony within that window, then I would agree with you, Judge, then, yes, the only way to raise that is in a PCRA petition, following the rules of the PCRA that be filed within one year, a one-year exception if it's not. But certainly before this court, we would never see it but for on a 2254, because if there were a federal claim of a credible recantation, that would be a 2255 or Rule 33, and then we wouldn't be analyzing it under a constitutional due process lens, we'd be analyzing it under, you really wouldn't need state action in those instances. So if trying to ascertain whether or not the state action is satisfied by the simple unknowing use at trial, is there any way we could ever reach this, since it would only seem to come before this court on a 2254 collateral appeal? I would have to agree with you on that, Judge. The window for filing it under the criminal rules is pretty small, so the chance that it would get to federal court are even smaller still on a direct appeal. So the only way it would come up is at a court that has questions of jurisdiction of the PCRA court, if the defendant has properly filed the PCRA and raised it within the time limits, has he properly filed and met all the jurisdictional and procedure requirements of a 2254 action in district court, and then is he satisfied the jurisdictional requirements to bring the appeal in front of this court. So because of the way it has risen, there are several procedural and jurisdictional hurdles that must be overcome that probably wouldn't exist in that narrow window that you could get it based on a decision under Rule 702 or 704 of the Pennsylvania Rules of Criminal Procedure. And assuming we were to side with Mr. Roth and say that this is a due process right, what clear and convincing evidence does the state have to rebut our presumption that the PCRA court was correct in its credibility assessment? Judge, quite candidly, my opposing counsel was correct that the main evidence was the victim who testified what the defendant did to her. The medical testimony was more or less to rebut a defendant's claim in cases like these. Well, there's no injury, which means absolutely no abuse. And the medical testimony was, you know, I saw these findings. It's consistent with abuse, but yes, it's consistent with many other things. So the fact that it's a normal doctor's testimony alone wasn't enough. It was supportive of your theory of the case, namely the witness, the victim's testimony. Yes, and to explain to a jury that just because there is sexual abuse doesn't necessarily mean there is injury to the victim, especially after a period of time had passed from the abuse to the disclosure and trial. Why isn't that a problem, right? And I think that's what your colleague would say, and I think that's what Mr. Marcy is arguing. If there is only one piece of evidence that sustains the conviction, that piece of evidence has now been found bewanting by the PCRA court, how is that not a due process violation? Judge, the Commonwealth's position is it's not a due process violation at this point because the appellant is misreading Kern, as you suggested in your recursor to Brady. The difference here is that this is a recantation case, and there's plenty of cases in Pennsylvania. I think I cited one or two in my brief. Recantation testimony is among the most unreliable testimony in the entire criminal justice system. Yes, but we have a finding from the PCRA court. Yes. It's also not unknown that in these types of cases, minor witnesses can be lacking in credibility. It's also known that there are challenges with eyewitness identifications, et cetera, et cetera, right? Yes, there are. Isn't Mr. Dooley correct that if Marcy can get over the procedural hurdles that this court has to accept as truth that the recantation is valid rather than in some way unreliable? Well, in this case, the Commonwealth would argue that because the Superior Court made its decision on jurisdictional grounds, it never reached the merits of the Commonwealth's appeal to say that the PCRA judge abused his discretion. All right. So that goes right into your procedural argument that we shouldn't assume that the Superior Court would have seen the recantation testimony the same way the PCRA court did. Yes. They could have found that the PCRA court abused its discretion in finding the recantation credible in light of the evidence of record that the victim could not explain how she would have known as a six-year-old various things in the record that she testified to at trial. There's also evidence that she was now living with her mother and grandmother who did not believe her and that the grandmother said this is all just a dream and also allowed her to talk on the phone to the defendant, to her abuser, when he would call on the phone and be able to make calls from the prison. So the Commonwealth's argument on appeal was because those facts existed, the PCRA court abused its discretion in finding that the defendant had met his And the Superior Court never addressed that. No, they did not. The Superior Court said what? The Superior Court said that he had not met the jurisdictional threshold of raising the recantation issue within a year of his judgment of sentence becoming final. So it was a strictly procedural jurisdictional issue that they granted relief on and reinstated. If we get past the jurisdictional issue, I assume you believe that state action is required, that there has to be some complicity by the state in the false testimony. Yes, Your Honor. And again, what about the Supreme Court's 1991 decision in Edmondson against Leesville? I didn't hear what she had just said. Edmondson versus Leesville in 1991, the Supreme Court indicated that racially motivated, peremptory challenges by civil litigants can violate due process under the Fifth Amendment. And there's no state action there. So why is state action required? I think it's because of the difference in civil versus criminal cases, Your Honor. In a civil case, litigants come to the court and it's the imprimatur of the state that legitimizes their dispute and they're asking the state to settle their dispute. So the state, through the courts, has to make sure that it's a fair process to both parties. And if you make a civil case so unfair by peremptory challenging, jurors based on race or gender or some other inappropriate reason, then the state imprimatur of that is questioned. Criminally, and in these cases... The court has a policing function about how the juries pick, but the court does not have a policing function about what a witness gets on the stand and says. The court may not have a policing function, but they certainly have a review function to still make sure everyone's playing by the rules. But if someone gets on the witness stand and says the light was red or the person did this to me or the person didn't do this to me, the court has no role in that. That's just up to the witness to say what the witness thinks. Well, it's up to the jury to decide whether or not they believe that witness. And defendant, through cross-examination, gets to question that witness to determine whether or not they are telling the truth. And I see that I'm out of time, so unless the court has any other questions? No, I think we don't. Thank you, Mr. McMonigle. We'll hear the rebuttal of Mr. Roddick. Thank you, Your Honors. Your Honors, I want to address the procedural default issue, which is what Mr. McMonigle relies primarily on both today and in his briefs. As Your Honor indicated, the March 2013 Pro Se amended petition, which is what the Superior Court says is the valid PCRA petition that was incorporated by reference, his Pro Se petitions. That's in JA 682. So to the extent those petitions raise the recantation issue, it is part of that counsel petition that started this case. My notes say it said, in addition to what defendant has alleged. Yes. Is that sufficient to be incorporating by reference? I think it is in the case of a Pro Se litigant, but I think ultimately the simpler approach, Your Honor, is to focus on the amended petition that was filed in May 2014. And that clearly raises the recantation issue. After Mr. Marsh's counsel filed that petition, Pennsylvania didn't object to it. The PCRA court didn't strike it. Instead it held an evidentiary hearing and ultimately granted relief on that claim. Now, three Pennsylvania Superior Court decisions have dealt with that exact situation. And all three of them have said when the PCRA court doesn't strike a petition and rules on the merits of an amended petition, that is a valid amendment. And an amendment is permitted at any time under rule 905. Pennsylvania Supreme Court in Dennis and those three decisions are Brown, Boyd, and in the Dennis court approved of those decisions in a footnote saying that when Pennsylvania raises an argument like Mr. McMonagle does today, that argument fails whenever it is raised. So on an issue where three Pennsylvania Superior Court decisions and the Pennsylvania Supreme Court have rejected the exact thing the Superior Court did here, the Superior Court's rule is not a firmly established and regularly applied one. It's not an independent and adequate state ground to preclude review. As to the recantation, I think Mr. Monagle suggested that the factual findings of the PCRA court aren't binding because the Superior Court reversed on procedural default. This court considered that exact issue and R. B. Frank rejected that argument and said that factual findings are valid. Even when a, a Superior Court reverses on some kind of jurisdictional ground and leaves those findings in place. The Superior Court's decision expressly did that here. It said it was not addressing those factual findings. So they remain binding under EDPA. Last year on her. I think Mr. Monagle was arguing that centrally litigants have to put up with the risk of some perjury in their criminal trials. That's an idea that current, the state of Delaware argued explicitly in current current rejected that explicitly said the perjurer was a state actor there, though. That's right. That's right. Your Honor, but the state action isn't, isn't there sort of in a commonsensical way, a real complicity on the part of the state. When the state puts a state actor on the stand and that person lies. Isn't that qualitatively different than when the state calls it. A civilian understand and the civilian lies. Assuming, of course, the state has no knowledge about the mendacity. I would certainly agree. It's different. I don't think it's different in a way that makes a difference to this case because it's still the, what current fundamentally looks at is how indispensable was that testimony to the conviction. And it says in this case, in that case, the testimony was indispensable. It doesn't say, well, that this person was a police officer. So there's some kind of team. That's, that's certainly true. I think in a, in a very real sense in terms of, of the likelihood of getting a conviction. So I, I don't want to in any way quarrel with the significance of it, but here we're talking about a constitutional violation under the 14th amendment. Right. And, and that typically require other than Edmondson, which I've raised with your friend on the other side, state action is a scene upon on for that. So I'm not sure, I guess what I'm suggesting is I'm not sure it's a compelling answer in terms of citing a constitutional violation to say that the perjured testimony by state witness and a civilian has the same effect in terms of consequences for the defendant. Well, I think you're on the state action comes from the fact that Pennsylvania has put Mr. Marcy in jail and kept him there based on evidence. That was a lie. That's where the state action. All right. Well, that's, that's fair enough, but that sounds like a really old expansion of 14th amendment jurisprudence, because what I hear you and correct me if I'm, if I'm misunderstanding, what I'm hearing you saying is that any time it turns out two years, five years or 15 years later, after a criminal case is prosecuted, that an important witness in the case has perjured him or herself that, that necessarily constitutes a due process violation. Is that the upshot of your argument? I think that the circumstances where that kind of claim is satisfied are exceptionally rare. And I think you just have to look at the second circuit cases to see how rarely that sort of relief has been granted, because first there has to be a finding that the testimony, that the recantation is credible and the vast majority of cases, a recantation is incredible. And then second, that recantation has to go to something that is really indispensable to the conviction. It has to be testimony without which there's no way the defendant could have been convicted. There are multiple second circuit cases where people have argued Sanders ninth circuit cases where people have argued the same principle. And the court has said, yeah, maybe this witness committed perjury, but there's abundant other evidence that you could have been convicted on, or the testimony that was recanted as a minor point. It doesn't really go to the heart of the case. I guess I'm just puzzled because we see a lot of these recantation cases on habeas. And the typical fact pattern is that there's one recipient witness. The jury apparently believes the eyewitness identification. And then five years later, eight years later, that key witness is at a funeral or at a party or in the neighborhood and, and, you know, has a conversation with some member of the victim's family. And then, then this court sees an affidavit from that essential witness saying, Hey, you know, eight years ago, I, I lied. It really wasn't, you know, Smith that, that shot the victim. It was Jones. So we see those claims all the time on habeas, but they never seem to be framed as 14th amendment due process violations. They're always, you know, some sort of ineffective assistance of counsel or sufficiency of the I don't know what to make of that. Is this sort of a new, a new avenue of constitutional law? I guess you're saying it can't be because you need to, you need to say it's more of the same in order to satisfy your burden. Right? I don't think it's a new issue. I think, I think the reason those cases are framed that way your honor is that showing materiality for a Brady type claim or showing materiality for a knowing misuse is much, much easier. You don't have to show that the testimony was indispensable to the conviction. So that's much more favorable in most cases. I think frankly, your honor, the vast majority of those kinds of cases you're talking about, they're disposed of by just simply finding that the recantation is incredible. A state trial court finds that the recantation is incredible. That's obviously binding under EDPA in a case like this, where the state court finds that the recantation is actually credible. It's entitled to the same deference as in any other case where this court defers to a state trial court finding ultimately your honor. I think the ninth circuits formulation of the statement in some of the cases it's had, it's perhaps the most persuasive that it's cold comfort to a defendant who is in prison based on a lie that no prosecutor knew it was a lie at the time. I ask that Mr. Marcy's conviction be vacated and maybe his petition be granted. Thank you, your honors. Thank you, Mr. Roth. Thank you, Mr. McGonigal, McMonigal. The, um, case was, uh, very well argued and, uh, the court thanks, uh, Mr. Roth and his law firm for their pro bono assistance in this case. The court will take the matter under advisement.